IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| MORNING HILL FOODS, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>WILLIAM D. HOSHIJO, AS EXECUTIVE DIRECTOR FOR THE HAWAIʻI CIVIL RIGHTS COMMISSION; ROBIN WURTZEL; and ROBIN RUDOLPH,<br><br>Defendants. | CIVIL NO. 17-00042 DKW-KSC<br><br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS AND STAYING CASE** |

## INTRODUCTION

Plaintiff Morning Hill Foods, LLC brings claims for declaratory and injunctive relief against William D. Hoshijo in his official capacity as Executive Director for the Hawaii Civil Rights Commission ("HCRC"), alleging the violation of federal constitutional rights as a result of an HCRC investigation and enforcement action involving an age discrimination complaint by a job applicant. Morning Hill seeks to enjoin an ongoing state administrative proceeding pending before the HCRC and seeks a declaration that a Hawaii state administrative rule and HCRC practices violate the United States Constitution. Morning Hill also brings state tort

claims for monetary damages against an HCRC staff attorney, Robin Wurtzel, and former HCRC investigator, Robin Rudolph.

The HCRC and Wurtzel move to dismiss, or, in the alternative, ask the Court to abstain in light of the pending state administrative proceeding. Because the principles set forth in *Younger v. Harris*, 401 U.S. 37 (1971), and its progeny counsel in favor of abstention, the Court defers any further action in this matter during the pendency of the ongoing state proceedings. Accordingly, for the reasons detailed below, Defendants' Motion is GRANTED IN PART to the extent it seeks abstention. The Motion is DENIED IN PART to the extent it requests dismissal. The case is STAYED pending the conclusion of the underlying state proceedings.

## BACKGROUND

### I.    HCRC Administrative Proceeding

Plaintiff Morning Hill Foods, LLC operates Mana Bu's, a Japanese take-out store located at 1618 South King Street in Honolulu. First Amended Complaint ("FAC") ¶ 10, Dkt. No. 9. Morning Hill's sole member is Manabu Asaoka, a citizen of Japan. FAC ¶ 1. Morning Hill filed the present action for injunctive and declaratory relief, as well as claims for monetary damages, alleging that it was denied due process during the HCRC's investigatory and enforcement processes initiated on January 27, 2014. The administrative proceeding, styled *William D. Hoshijo, Executive Director, on Behalf of Serena M.Y. Kyi-Yim, Complainant vs.*

*Morning Hill Foods, LLC, dba Mana Bu's, Respondent*, Docket No. 16-002-E-A ("Administrative Proceeding"), is currently pending before Hearings Examiner Leslie A. Hayashi at the HCRC.

### A.    HCRC Charge, Investigation, And Notice Of Finding

In late 2013, Morning Hill advertised on the internet seeking part-time employees that it described as "active full time undergraduate (B.A.)" students. Pl.'s Mem. In Opp'n, Ex. 2 (3/17/17 Order) at 2, Dkt. No. 20-3; *see also* FAC ¶ 15.[1] In October 2013, an "unidentified woman of unidentified age came into [Mana Bu's] during peak hours and demanded to speak to the owner/manager about applying for a job." FAC ¶ 11. Asaoka was working in Mana Bu's kitchen at the time and came to the front of the store to speak with the woman for thirty seconds about her interest in working there. The woman did not identify herself and left the shop without providing a resume, or contacting Asaoka thereafter. FAC ¶¶ 13-14.

On January 27, 2014, the potential job-applicant, Serena Kyi-Yim,[2] signed an HCRC Charge of Discrimination alleging age discrimination against Morning Hill based on the internet job advertisement "posted on Craig's List soliciting 'active

---

[1] In January 2014, Morning Hill also posted a sign in Manu Bu's storefront window: "Winter-Spring 2014 Now Hiring UH (Manoa) Students." Pl.'s Mem. In Opp'n, Ex. 2 at 2.
[2] Morning Hill disputes that Kyi-Yim is the person with whom Asaoka spoke regarding possible employment in October 2013. *See* FAC ¶ 17. In a March 20, 2014 letter to Honolulu City Council Member Ann Kobayashi seeking assistance with the HCRC Charge of Discrimination, Asaoka contends that "the woman [he] met in October 2013 at [Mana Bu's] was not Serena [Kyi-Yim], as Mr. Asaoka had previously seen [Kyi-Yim] on television on multiple occasions, as [Kyi-Yim] was the vice chair of the Moiliili and McCully Neighborhood Board." FAC ¶¶ 20-21.

undergraduate (B.A.) students.'" FAC ¶ 15. On January 29, 2014, the HCRC

issued a Notice of Filing of Discrimination Complaint against Morning Hill on

behalf of Kyi-Yim. FAC ¶ 17. According to Morning Hill, the investigation into

the Charge filed by Kyi-Yim was assigned to Defendant Rudolph, a former HCRC

investigator.[3] FAC ¶ 16.

Over two years later, on February 18, 2016, the HCRC sent a letter to

Morning Hill's counsel indicating that it had "found 'reasonable cause' that

discrimination had occurred." FAC ¶ 22. Attached to the letter was the HCRC's

"Notice of Finding of Reasonable Cause to Believe that Unlawful Discriminatory

Practices Have Been Committed" ("Notice of Finding") signed by Hoshijo. FAC

¶ 23. On March 14, 2016, Morning Hill's counsel, Asaoka, and HCRC staff

attorney Wurtzel met at the HCRC to discuss a possible settlement. During the

meeting, Morning Hill raised objections to the Notice of Finding. FAC ¶ 24.

Thereafter, the HCRC sent Morning Hill an "Amended Notice of Finding of

Reasonable Cause to Believe that Unlawful Discriminatory Practices Have Been

Committed" ("Amended Notice of Finding") dated March 18, 2016, which Morning

---

[3]Rudolph is no longer employed by the HCRC, has not been served with process, and has not appeared in this matter. *See* Defs.' Scheduling Conf. Statement at 4, Dkt. No. 21; Defs.' Mem. In Supp. at 3.

Hill alleges deleted important factual findings and a theory of liability.[4]   FAC

¶¶ 25-27.

On October 21, 2016, the HCRC sent Morning Hill's counsel a letter signed

by Wurtzel, stating that the HCRC was willing to settle the matter for a specified

sum, and referring Morning Hill to Hawaii Administrative Rule ("HAR")

§ 12-46-133.   That administrative rule generally prohibits listing an age preference

when advertising for a job opening, including using such phrases as "college

student," "recent college graduate," or "others of a similar nature[.]"   FAC ¶ 28

(quoting HAR § 12-46-133).   Several days later, on October 26, 2016, the HCRC

sent another letter indicating that the offer to settle for that same amount would

remain open until November 9, 2016.   FAC ¶ 29.   Morning Hill's counsel

responded via email to Wurtzel on October 28, 2016, notifying the HCRC that

Morning Hill declined the settlement offer and elected to proceed to hearing.   FAC

¶ 30.   According to Morning Hill, on December 1, 2016, Hoshijo "sent Plaintiff's

attorney a letter, refusing Plaintiff's request to reassign the case to another

enforcement attorney."   However, nowhere in the pleadings is the timing or the

basis for Morning Hill's request for reassignment further explained.   FAC ¶ 32.

---

[4]Neither the Notice of Finding, the Amended Notice of Finding, nor any of the related
correspondence, is attached to the First Amended Complaint.

### B.     **Pending Administrative Proceeding**

On December 6, 2016, the HCRC formally docketed the Administrative Proceeding. FAC ¶ 11. Morning Hill filed its Scheduling Conference Statement on December 14, 2016, listing the following defenses:

    (1)    Expiration of statute of limitations or laches;

    (2)    H.A.R. § 12-46-133 violates the following constitutional guarantees in the Constitution of the United States and the Constitution of the State[] of Hawaii: (a) freedom of speech; (b) freedom of association; (c) due process; and (d) equal protection and application of the laws.

    (3)    Incompatibility with federal law/federal preemption.

FAC ¶ 35. On December 23, 2016, Morning Hill filed a Motion to Dismiss Complaint on the basis that the HCRC's February 18, 2016 Reasonable Cause Letter and Notice of Finding were untimely. The HCRC filed its reply to the Motion to Dismiss Complaint on December 27, 2016.[5] FAC ¶ 38.

On December 28, 2016, the Hearings Examiner held a Scheduling Conference and hearing on Morning Hill's Motion to Dismiss. Morning Hill alleges that, at

---

[5]Attached to the HCRC's reply were six internal HCRC memoranda extending for approximately six to twelve-month increments the 180-day deadline set forth in HRS § 368-13(b) to "investigate all open complaints filed with the Commission." FAC ¶¶ 38-39. The memoranda are dated January 22, 2014, June 9, 2014, December 15, 2014, August 3, 2015, January 22, 2016, and June 2, 2016, and each directs that "a copy of this memorandum should be filed in all open complaints." FAC ¶ 39. According to Morning Hill, the HCRC failed to provide notice "that the 180 day deadline for issuing its reasonable cause letter and notice of finding had been extended, notwithstanding the fact that the statutory deadline had been purportedly extended on six (6) separate occasions," between July 27, 2014 and December 27, 2016. FAC ¶ 40.

"the Scheduling Conference, the Hearings Examiner explicitly stated that she did not have jurisdiction over any Constitutional issue relevant to the Administrative Proceeding." FAC ¶ 36. On December 29, 2016, the Hearings Examiner issued her Order Denying Respondent's Motion to Dismiss, rejecting Morning Hill's argument that "the Amended Finding of Reasonable Cause filed on March 18, 2016 was filed beyond the 180 day deadline [mandated by Hawaii Revised Statutes ("HRS") § 368-13(b)] . . . because HAR Section 12-46-6.1 specifically provides that 'amendments shall relate back to the original filing date of the document.'" Pl.'s Mem. In Opp'n, Ex. 1 (12/29/16 Order) at 2, Dkt. No. 20-2.

On March 17, 2017, the Hearings Examiner granted the HCRC's Motion for Summary Judgment, concluding that Morning Hill engaged in age discrimination when posting job listings specifically seeking undergraduate students. Pl.'s Mem. In Opp'n, Ex. 2 at 6. The Hearings Examiner determined that the October 2013 internet posting and the January 2014 sign in Mana Bu's storefront window violated HRS § 378-2(a)(1)(C) and HAR §§ 12-46-131 and 133, finding, in part, based on Morning Hill's "admitted . . . desire to hire college students," that "[b]oth the language of the advertisements and [Morning Hill's] intent are tantamount to age discrimination[.]" *Id.* at 3. The Hearings Examiner also rejected Morning Hill's claim that Kyi-Yim was not the person to whom Asaoka spoke in October 2013, holding that, under HAR § 12-46-5(b), the Executive Director may bring an action

"without an actual complainant . . . regardless of whether Ms. Kyi-Yim is found to be the person who approached [Asaoka] in response to the advertisements." *Id*. at 4. Morning Hill also raised a bona fide occupational qualification ("BFOQ") argument to justify the need to hire undergraduate students, which the Hearings Examiner found to lack merit. *See id*. at 4-6 (citing HRS § 378-3 and HAR § 12-46-132).

The Hearings Examiner's March 17, 2017 Order notes that a hearing is set for May 17 through 19, 2017 to determine damages or other appropriate relief—the only remaining issues in the Administrative Proceeding. *Id*. at 6.

## II.    **The Instant Federal Lawsuit**

Morning Hill filed its Complaint and First Amended Complaint in this federal civil action on January 31, 2017, while the Administrative Proceeding was midstream—*e.g*., after the Hearings Examiner denied the Motion to Dismiss on December 29, 2016, but before she granted the Motion for Summary Judgment on March 17, 2017.

### A.    **Morning Hill's Claims**

The instant case involves a constitutional challenge to HAR § 12-46-133, which prohibits employers from recruiting prospective employees by using the phrase "college student." Morning Hill contends that this law violates its freedom of speech, freedom of association, as well as due process rights guaranteed under the

First, Fifth, and Fourteenth Amendments to the U.S. Constitution. Morning Hill brings a second constitutional challenge based upon the HCRC's alleged practice of unilaterally extending HRS § 368-13(b)'s 180-day deadline within which to issue a reasonable cause finding, without providing notice to the respondent employer, resulting in the deprivation of Morning Hill's due process rights.

The First Amended Complaint asserts the following causes of action: (1) request for declaratory relief determining that HAR § 12-46-133 and the HCRC's practice of failing to inform Morning Hill that the statutory deadline under HRS § 368-13(b) had been extended violate the U.S. Constitution (Count I); (2) request for injunctive relief prohibiting the HCRC from pursuing the claims against Morning Hill in the Administrative Proceeding (Count II); (3) state tort claims against Wurtzel and Rudolph for negligent investigation and enforcement; an abuse of process claim against Wurtzel, and a *respondeat superior* claim against the HCRC (Count III); and (4) punitive damages (Count IV).

## B. Motion To Dismiss

On February 17, 2017, Hoshijo and Wurtzel moved to dismiss the claims against them based upon (1) the State's sovereign immunity under the Eleventh Amendment; and (2) the absence of complete diversity between the parties. Defendants also seek dismissal under various federal abstention doctrines based on the pending Administrative Proceeding.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) authorizes a court to dismiss claims over which it lacks proper subject matter jurisdiction. "[U]nlike a Rule 12(b)(6) motion, in a Rule 12(b)(1) motion, the district court is not confined to the four corners of the complaint—it may consider facts and need not assume the truthfulness of the complaint[,]" and the existence of disputed material facts will not preclude the court from evaluating the existence of subject matter jurisdiction. *Americopters, LLC v. Fed. Aviation Admin.*, 441 F.3d 726, 732 n. 4 (9th Cir. 2006); *see also Ass'n of Am. Med. Colls. v. United States*, 217 F.3d 770, 778 (9th Cir. 2000); *Kealia Water Co. Holdings, LLC v. Plantation Partners Kauai, LLC*, 665 F. Supp. 2d 1189, 1196 (D. Haw. 2009) ("In hearing the motion to dismiss, the court has [ ] broad discretion as to the method to be used in resolving the factual dispute[s].") (citations and quotation signals omitted).

Whether or not the Court treats *Younger* abstention as "jurisdictional," *see Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 100 n.3 (1998), the Court does not reach the merits of the dispute for purposes of the instant Motion.[6]   *See D.L. v.*

---

[6]The Court acknowledges that both the Supreme Court and the Ninth Circuit have alternatively described abstention as jurisdictional and *not* jurisdictional.   *Compare Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.*, 477 U.S. 619, 626 (1986) (explaining that *Younger* abstention "does not arise from lack of jurisdiction in the District Court, but from strong policies counseling against the exercise of such jurisdiction where particular kinds of state proceedings have already been commenced") *with Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 100 n.3 (1998) (noting that the Supreme Court has treated *Younger* abstention as "jurisdictional").   *Compare also Canatella*

*Unified Sch. Dist. No. 497*, 392 F.3d 1223, 1229 (10th Cir. 2004) (ruling that the Court had no power to address the merits when confronted with the possibility of *Younger* abstention).

## **DISCUSSION**

Hoshijo and Wurtzel seek dismissal under various federal abstention doctrines in light of the pending Administrative Proceeding, in addition to asking the Court to dismiss for lack of subject matter jurisdiction.[7]  Because all of the *Younger* elements are met, no exceptions apply, and Morning Hill's federal action would have the practical effect of enjoining the ongoing state proceedings, the Motion is granted in part, and this matter is stayed pending resolution of the underlying state proceedings.

---

*v. Cal.*, 404 F.3d 1106, 1113 (9th Cir. 2005) ("*Younger* abstention is essentially a jurisdictional doctrine.") *with Benavidez v. Eu*, 34 F.3d 825, 829 (9th Cir. 1994) ("*Younger* abstention is not jurisdictional, but reflects a court's prudential decision not to exercise jurisdiction which it in fact possesses. . . ."). *See also Tinsley v. McKay*, 156 F. Supp. 3d 1024, 1030 n.6 (D. Ariz. 2015) (citing Erwin Chemerinsky, *Federal Jurisdiction* § 13.2, at 828–829 (5th ed. 2007) (noting lack of clarity regarding whether *Younger* "announce[d] a constitutional bar to federal court relief" or a prudential one)).

[7]Because the Court finds that *Younger* abstention is appropriate under the circumstances, it does not reach Defendants' additional arguments that the State of Hawaii has not waived its sovereign immunity for Constitutional claims or for abuse of process.   With respect to Defendants' argument that the Court lacks diversity jurisdiction pursuant to 28 U.S.C. § 1332, the Court notes that all Defendants who have appeared in this matter are citizens of Hawaii, and Morning Hill's sole member, Manabu Asaoka, is a citizen of Japan.   *See Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006) ("[A]n LLC is a citizen of every state of which its owners/members are citizens.").

# I.     *Younger* Abstention Is Appropriate

*Younger* requires federal courts to abstain from exercising jurisdiction over claims that implicate ongoing state proceedings. *Younger*, 401 U.S. at 43–44. The *Younger* doctrine reflects "a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances." *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982). *Younger* applies if the federal action involves ongoing: (1) "state criminal prosecutions"; (2) "civil proceedings that are akin to criminal prosecutions"; or (3) civil proceedings that "implicate a State's interest in enforcing the orders and judgments of its courts." *See Sprint Communications, Inc. v. Jacobs*, 134 S. Ct. 584, 588 (2013). The Supreme Court has recognized that civil actions such as Morning Hill's—challenging civil rights enforcement actions initiated by a state agency—fall within the second category. *See Ohio Civil Rights Comm'n v. Dayton Christian Schs., Inc.*, 477 U.S. 619, 623–27 (1986) (applying *Younger* to state administrative proceedings involving alleged sex discrimination).[8]

_____

[8] Although initially applied to protect state criminal prosecutions against interference, the *Younger* doctrine has been extended to "coercive" civil cases involving the state and to comparable state administrative proceedings that are quasi-judicial in character and implicate important state interests. *See, e.g., Ohio Civil Rights Comm'n*, 477 U.S. 619, 623–27; *Middlesex Cty.*, 457 U.S. at 432 (applying *Younger* to administrative proceedings brought by state ethics committee to discipline an attorney); *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 603–05 (1975) (applying *Younger* to a civil proceeding initiated by the state to enforce a nuisance statute).

## A.     The Threshold *Younger* Requirements Have Been Established

The Ninth Circuit recently explained the *Younger* framework as follows:

> In civil cases . . . *Younger* abstention is appropriate only when the state proceedings: (1) are ongoing, (2) are quasi-criminal enforcement actions or involve a state's interest in enforcing the orders and judgments of its courts, (3) implicate an important state interest, and (4) allow litigants to raise federal challenges. If these "threshold elements" are met, [courts] then consider whether the federal action would have the practical effect of enjoining the state proceedings and whether an exception to *Younger* applies. Each element must be satisfied, and the date for determining whether *Younger* applies is the date the federal action is filed.

*ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*, 754 F.3d 754, 759 (9th Cir. 2014) (citing *Sprint Commc'ns, Inc. v. Jacobs*, 134 S. Ct. 584, 593–94 (2013)) (other citations and quotations omitted). These elements are met here.

First, the HCRC proceedings are ongoing.[9] *Younger* abstention applies where a litigant has not exhausted its state appellate remedies. *See Dubinka v. Judges of Superior Court of State of Cal. for Cty. of L.A.*, 23 F.3d 218, 223 (9th Cir.

---

[9]"Whether the state proceedings are 'pending' is not determined by comparing the commencement dates of the federal and state proceedings. Rather, abstention under *Younger* may be required if the state proceedings have been initiated before any proceedings of substance on the merits have taken place in the federal court." *Polykoff v. Collins*, 816 F.2d 1326, 1332 (9th Cir. 1987). *See also Loan Payment Admin. LLC v. Hubanks*, No. 14-CV-04420-LHK, 2015 WL 3776939, at *6 (N.D. Cal. June 17, 2015) ("[T]he Court has neither set a case schedule nor approved a discovery plan. This case remains in its infancy and, because the state enforcement proceeding is currently pending, the 'ongoing state proceeding' element of *Younger* is satisfied.") (citation omitted); *Mir v. Kirchmeyer*, 2014 WL 2436285, at *11 (S.D. Cal. May 30, 2014) ("[T]he Court adopts the majority approach of treating judicial review of state administrative proceedings as a unitary process that is not to be interrupted by federal court intervention.").

1994) (citing *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 607–11 (1975)).  Here, the

Administrative Proceeding stemming from the 2014 Charge and 2016 Notice of

Finding was pending before the Hearings Examiner at the time Morning Hill filed its

original Complaint in this Court on January 31, 2017.  Morning Hill's Motion to

Dismiss was denied on December 29, 2016, the Summary Judgment Order issued on

March 17, 2017, and the issue of damages and/or remedies remains to be determined

by the Hearings Examiner.  *See* Mem. In Opp'n at 4, 7-8, Exs. 1 and 2.  Thus, the

proceedings are ongoing, and the path towards state appellate review has not begun.

Second, the enforcement action that the HCRC initiated against Morning Hill

is the type of proceeding that triggers *Younger* abstention.  Civil enforcement

actions are akin to criminal proceedings in that "a state actor is routinely a party to

the state proceeding and often initiates the action, the proceedings are

characteristically initiated to sanction the federal plaintiff for some wrongful act,

and investigations are commonly involved, often culminating in the filing of a

formal complaint or charges."  *ReadyLink*, 754 F.3d at 759 (citing *Sprint*, 134 S. Ct.

at 592).  Each of these facts is present here.  *See also Ohio Civil Rights Comm'n*,

477 U.S. 619, 623–27; *Ocean Grove Camp Meeting Ass'n of United Methodist

Church v. Vespa-Papaleo*, 339 F. App'x 232, 237-38 (3d Cir. 2009) (Holding that

New Jersey Division on Civil Rights ("DCR") "proceedings are judicial in nature

from the point that a complaint is filed" with the state agency because "when a

complaint is filed with the DCR, the agency launches a 'prompt' investigation that is

akin to the discovery period in federal court.   And if, at the end of the investigation,

the DCR finds probable cause, a trial-like hearing is held."); *Choudhry v. Regents of*

*the Univ. of Cal.*, No. 16-CV-05281-RS, 2016 WL 6611067, at *5 (N.D. Cal.

Nov. 9, 2016) (citing *Baffert v. Cal. Horse Racing Bd.*, 332 F.3d 613, 617-18 (9th

Cir. 2003)) ("The Ninth Circuit has held that when these circumstances are

present—where there is legal representation at an adjudicatory hearing—the

proceeding is 'quasi-judicial.'").[10]

Third, the Supreme Court expressly held that there is "no doubt" that the

elimination of prohibited discrimination "is a sufficiently important state interest" to

satisfy the requirements of *Younger*.   *Ohio Civil Rights Comm'n*, 477 U.S. at 628.

When evaluating *Younger*'s third prong, this Court must look to "the importance of

the generic proceedings to the state," not to the specific concern of the particular

proceeding.   *New Orleans Pub. Serv. Inc. v. Council of New Orleans* (*NOPSI*), 491

U.S. 350, 365 (1989) (noting that in *Ohio Civil Rights Commission*, "we looked not

to Ohio's specific concern with Dayton Christian Schools' firing of Linda

---

[10]*See also O'Neill v. City of Philadelphia*, 32 F.3d 785, 790–91 (3d Cir. 1994) ("We have been
given no reason why a litigant in a state administrative proceeding should be permitted to forego
state-court review of the agency's decision in order to apply for relief in federal court.   Rather, we
find the grounds offered by the Supreme Court to support its holding in *Huffman*—that state
appellate review of a state court judgment must be exhausted before federal court intervention is
permitted—are equally persuasive when considered with respect to state-court judicial review of a
state administrative decision.").

Hoskinson, but to its more general interest in preventing employers from engaging in sex discrimination"). When doing so here, the state interest is materially identical to that considered by the Supreme Court in *Ohio Civil Rights Commission*. Morning Hill's federal claims arise out of the HCRC's investigation into whether Mana Bu's job postings constitute age discrimination under HRS Chapter 378 and HAR § 12-46-133. Accordingly, as in *Ohio Civil Rights Commission*, the State's interest in eliminating unlawful discrimination is at the center of the dispute.

The fourth *Younger* factor requires that the state proceedings allow litigants to raise federal challenges. The Supreme Court has held that even if the underlying administrative proceedings do *not* provide litigants with the opportunity to bring their constitutional challenges, it is sufficient that constitutional claims may be raised in state-court judicial review of the administrative proceeding. *See Ohio Civil Rights Commission*, 477 U.S. at 629 (citing *Middlesex County*, 457 U.S. at 436); *see also Choudhry*, 2016 WL 6611067, at *5 ("The Supreme Court has, on multiple occasions, affirmed decisions to abstain notwithstanding a state agency's refusal or inability to consider federal challenges in the initial administrative proceedings, where those challenges could be presented during state-court judicial review.") (citing *Middlesex County*, 457 U.S. at 435–36; and *Ohio Civil Rights Commission*, 477 U.S. at 629).

Here, HRS Chapter 368 provides for, and Morning Hill may yet avail itself of, state-court judicial review of the Hearings Examiner's decisions. *See* HRS § 368-16.[11] Morning Hill points to no persuasive authority that it is barred from raising its constitutional challenges in state court. Instead, Morning Hill insists that this prong of *Younger* is not met because the Administrative Proceeding itself does not afford it the opportunity to raise its constitutional claims. The case law, however, is to the contrary. For example, in *Middlesex*, an attorney challenged his disciplinary proceedings as unconstitutional, arguing that the underlying disciplinary rule violated his First Amendment rights. He claimed, like Morning Hill, that "there was no opportunity in the state disciplinary proceedings to raise his federal constitutional challenge to the disciplinary rules." 457 U.S. at 435. The Supreme Court flatly rejected this argument. It found that the plaintiff "failed even to attempt to raise any federal constitutional challenge in the state proceedings," and

---

[11]Under HRS § 368-16(a), either party has "a right of appeal from a final order of the [HCRC] . . . in the circuit court for the circuit in which the alleged violation occurred or where the person against whom the complaint is filed, resides, or has the person's principal place of business. An appeal before the circuit court shall be reviewed de novo." The Circuit Court has the authority to issue orders granting relief pending the appeal, and "may grant temporary relief as it considers just, or enter an order enforcing, modifying and enforcing as modified, or setting aside in whole or in part the order of the commission, or may remand the case to the commission for further proceedings." HRS § 368-16(c). "The final judgment or decree of the circuit court shall be subject to review by appeal in the same manner and form as other appeals from that court[,]" HRS § 368-16(d), and appellate review of a question of law regarding the constitutionality of the HCRC's governing statutes or regulations is reviewed *de novo*. *See State v. Hoshijo ex rel. White*, 102 Hawai'i 307, 317, 76 P.3d 550, 560 (2003) (The appellate court's "standard of review of an appeal from the circuit court regarding an appeal from the HCRC is that we review the findings of fact of the circuit court under a clearly erroneous standard, and its conclusions of law *de novo* under the right or wrong standard.").

"point[ed] to nothing . . . to indicate that the members of the Ethics Committee, the majority of whom are lawyers, would have refused to consider a claim that the rules which they were enforcing violated federal constitutional guarantees." *Id.* Moreover, it noted that the state appellate court entertained the constitutional issues raised by the plaintiff during judicial review. *Id.* at 436. The Supreme Court reiterated that abstention is based upon the theory that "'[t]he accused should first set up and rely upon his defense in the state courts, even though this involves a challenge of the validity of some statute, unless it plainly appears that this course would not afford adequate protection.'" *Id.* (citing *Younger*, 401 U.S. at 45). Morning Hill must do the same here.

State courts are presumed to be an adequate venue in which to assert federal challenges "in the absence of unambiguous authority to the contrary." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15 (1987); *Hirsh v. Justices of the Supreme Ct. of Cal.*, 67 F.3d 708, 713 (9th Cir. 1995). In the instant case, there is no such unambiguous authority suggesting otherwise. *Cf. Delahunty v. State of Hawaii*, 677 F. Supp. 1052, 1060 (D. Haw. 1987) ("If plaintiff believes that his federal constitutional rights are being trampled in [state family] court, his remedy lies with the Hawaii appellate courts and then by appeal to the United States Supreme Court. Minimal respect for the state processes precludes any presumption that the state courts will not safeguard federal constitutional rights.") (citation omitted). Indeed, at the

hearing on Defendants' Motion, Morning Hill acknowledged that it could bring its

constitutional claims before the state court on appeal—it simply did not wish to wait

until the conclusion of the Administrative Proceeding to do so.   With regard to the

adjudication of Morning Hill's constitutional rights, the final prong of *Younger* is

clearly met.

For the reasons explained above, each of the *Younger* threshold elements has

been established.   The Court next considers whether the federal action would have

the practical effect of enjoining the state proceedings and whether any exceptions to

*Younger* apply.   *See ReadyLink*, 754 F.3d at 759.

### B.      Practical Effect On State Proceedings

After the threshold elements are met, in order for *Younger* abstention to

apply, "[t]he requested [federal court] relief must seek to enjoin—or have the

practical effect of enjoining—ongoing state proceedings."   *ReadyLink*, 754 F.3d at

758.   Although "direct" interference is not required, there must be some

interference with state court proceedings for *Younger* to apply.

*AmerisourceBergen Corp. v. Roden*, 495 F.3d 1143, 1149 n.9 (9th Cir. 2007).

Morning Hill prays—

> A. For declaratory relief determining that HAR § 12-46-133
> violates the Constitution of the United States;
>
> B. For declaratory relief determining that Defendant HCRC's
> practice of failing to inform Plaintiff that the statutory
> deadline under HRS § 368-13 (b) had been extended on six

(6) separate occasions violates the Constitution of the United States;

C. For injunctive relief in favor of Plaintiff and against Defendant HCRC, prohibiting Defendant HCRC from pursuing the claims against Plaintiff in the Administrative Proceeding[.]

FAC at 20-21. Were the Court to grant such relief, it would enjoin—and clearly interfere with—the ongoing state proceeding.

Moreover, Morning Hill's federal claims, Counts I and II, represent a collateral constitutional challenge to the pending Administrative Proceeding. In *Gilbertson v. Albright*, 381 F.3d 965 (9th Cir. 2004) (en banc), the Ninth Circuit held that *Younger* principles applied to plaintiff's Section 1983 claim because the constitutional issues raised in his federal complaint, including First Amendment retaliation, due process, and equal protection, "go to the heart of his opposition to the [agency's] action in the state proceeding, such that a federal court's decision on the merits of [plaintiff's] claims would have the same practical effect on the state proceeding as an injunction." 381 F.3d at 979–82. Similarly, Morning Hill has raised constitutional claims—and state tort claims—that go to the heart of its opposition to the HCRC's enforcement action in the pending Administrative Proceeding. This Court's determination of those claims would interfere with the Administrative Proceeding as it "would frustrate the state's interest in administering its judicial system, cast a negative light on the state court's ability to enforce

constitutional principles, and put the federal court in the position of prematurely or unnecessarily deciding a question of federal constitutional law."   *Id*. at 980.

Accordingly, this additional predicate for *Younger* abstention is met.   *See ReadyLink*, 754 F.3d at 759.

## C.    No Exception Applies

The Court also considers whether any exception to *Younger* abstention applies.   The Court must examine whether the state proceeding is characterized by bias, bad faith, harassment, or some other extraordinary circumstances that would make abstention inappropriate.   *Kenneally v. Lungren*, 967 F.2d 329, 332 (9th Cir. 1992).   "Bias exists where a court [or tribunal] has prejudged, or reasonably appears to have prejudged, an issue."   *Id*. at 333.   The party raising bias must overcome a presumption of honesty and integrity in those serving as adjudicators. *Id.*   Bad faith typically means that "a prosecution has been brought without a reasonable expectation of obtaining a valid conviction."   *Baffert v. Cal. Horse Racing Bd*., 332 F.3d 613, 621 (9th Cir. 2003); *see also Tankersley v. Arcand*, 2016 WL 8730740, at *7 (E.D. Cal. May 27, 2016) ("The Ninth Circuit has found *Younger* abstention []applicable where: '[plaintiff's] allegations . . . fall far short of establishing bad faith of the sort sufficient to invoke [the bad faith and harassment] exception.   There was no allegation of repeated harassment by enforcement authorities with no intention of securing a conclusive resolution by an administrative

tribunal or the courts, [] or of pecuniary bias by the tribunal.'") (quoting *Partington v. Gedan*, 961 F.2d 852, 861–62 (9th Cir. 1992)).

Because Morning Hill points to no evidence of bias or bad faith, nor any other extraordinary circumstance, the Court finds no exception applies that would make *Younger* abstention inappropriate here.

## II.    <u>The Matter Is Stayed</u>

"[C]ourts have frequently associated *Younger* abstention with dismissals, not stays."   Nonetheless, where *Younger* applies to an action involving "constitutional challenges which can be asserted in pending state proceedings that implicate important state interests, . . . the correct disposition is to defer—not to dismiss—when damages are at issue."   *Gilbertson*, 381 F.3d at 981–82.   "To stay instead of to dismiss the federal action preserves the state's interests in its own procedures, the federal plaintiff's opportunity to seek compensation in the forum of his choice, and an appropriate balance of federal-state jurisdiction."   *Gilbertson*, 381 F.3d at 984.

Accordingly, this matter shall be stayed pursuant to *Younger*, including the claims for declaratory and injunctive relief.   *See, e.g., Yamaha Motor Corp., U.S.A. v. Stroud*, 179 F.3d 598, 603–04 (8th Cir. 1999) (Holding that a stay rather than a dismissal is appropriate when "monetary damages are sought in addition to injunctive relief[.]"); *Traverso v. Penn*, 874 F.2d 209, 213 (4th Cir. 1989) ("That the

§ 1983 claim at issue seeks not only injunctive and declarative relief but money damages as well does not preclude abstention as to the whole action. Under our decisions, the appropriate course is to abstain by staying proceedings on monetary as well as injunctive and declaratory actions.").

## III. **Summary**

Because the threshold elements of the *Younger* doctrine are met, no exceptions apply, and Morning Hill's federal action would have the practical effect of enjoining the ongoing state proceedings, the Court finds abstention to be appropriate. To rule on the constitutional issues in these circumstances would not only implicate, but interfere with, the State's interest in enforcing its civil rights laws and the administration of its judicial system, and "put the federal court in the position of making a premature ruling on a matter of constitutional law." *Gilbertson*, 381 F.3d at 984. The interests of comity counsel restraint.

Because Morning Hill seeks monetary damages in addition to declaratory and injunctive relief, the Court imposes a stay of the entire case, rather than dismissing the action in part, in order to avoid piecemeal litigation. *See Gilbertson*, 381 F.3d at 981 (directing courts to stay, as opposed to dismiss, where monetary damages are sought and *Younger* abstention is applied). In light of this stay, the Court further orders that the case be administratively closed.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is GRANTED IN PART. This matter is hereby STAYED until a final decision is rendered in Morning Hill's Administrative Proceeding and any appeal therefrom. The parties are directed to notify the Court within fourteen days of the issuance of a final decision terminating the state proceedings in this matter. In light of this stay, the case is administratively closed. The case will be reopened by the Clerk of Court upon the conclusion of all pending state proceedings, or upon further order of this Court. Such an order reopening the case may be issued *sua sponte*, or any party may petition for reopening upon a showing of good cause. The closing of this case is solely an administrative matter and does not impact any party's rights or obligations in pending matters before the HCRC or any future state appellate proceedings. No additional filing fee is required to reopen the case.

IT IS SO ORDERED.

DATED: May 2, 2017 at Honolulu, Hawaiʻi.



Derrick K. Watson
United States District Judge

*Morning Hill Foods, LLC v. Hoshijo et al.*, CV. NO. 17-00042 DKW-KSC; **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS AND STAYING CASE**